UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SUE ELLEN MORAN,

      Plaintiff,

v.                                              Civil Action 2:21-cv-214
                                                Judge Sarah D. Morrison
COMMISSIONER OF SOCIAL                          Magistrate Judge Chelsey M. Vascura
SECURITY,

      Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Sue Ellen Moran, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income benefits. This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 16),[1] the Commissioner's Memorandum in Opposition (ECF No. 17), and the administrative record (ECF No. 12). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's determination.

---

[1] Plaintiff originally filed her Statement of Errors at ECF No. 15, using PageID# citations, and then refiled it at ECF No. 16 using "Tr." citations. The undersigned will refer to ECF No. 16.

I.  BACKGROUND

Plaintiff previously filed several applications for disability benefits.[2] She filed her current application for supplemental security income benefits on May 17, 2016,[3] alleging that she became disabled beginning August 1, 2008. (R. 345–55.) On October 26, 2018, following administrative denials of Plaintiff's application initially and on reconsideration, and after a hearing, Administrative Law Judge Julianne Hostovich (the "ALJ") issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 171–92.) Plaintiff filed a Request for Review of the administrative decision on November 12, 2018. (R. 278–81.) The Appeals Council issued a Remand Order on September 13, 2019, (R. 195–98), and the ALJ held a second hearing on January 21, 2020. (R. 41–65.) Plaintiff, represented by counsel, and a vocational expert, Cecilia L Thomas, appeared and testified. On February 26, 2020, the ALJ issued a decision denying benefits. (R. 14–40.) On November 17, 2020, the Appeals Council denied Plaintiff's subsequent Request for Review and adopted the ALJ's decision as the Commissioner's final decision. (R. 1–6.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

In her Statement of Errors (ECF No. 16), Plaintiff advances two contentions of error: (1) the ALJ's residual functional capacity ("RFC")[4] determination is not supported by substantial

---

[2] Plaintiff filed an application for a period of disability and disability insurance benefits on May 2, 2011, alleging that she had been disabled since August 1, 2008. (*See* R. 156.) On February 1, 2013, following administrative denials of Plaintiff's application initially and on reconsideration, Administrative Law Judge Jon K. Johnson issued a decision finding that Plaintiff was not disabled within the meaning of the Act. (R. 156–66.) Plaintiff then filed an application for supplemental security income benefits on July 23, 2013, alleging that she had been disabled since January 1, 2010. (*See* R. 110.) On March 11, 2016, following administrative denials of Plaintiff's application initially and on reconsideration, Administrative Law Judge Shreese M. Wilson issued a decision finding that Plaintiff was not disabled within the meaning of the Act. (R. 110–18.)

2

evidence; and (2) the ALJ failed to properly consider Plaintiff's fibromyalgia and her corresponding symptoms.

## II. THE ALJ'S DECISION

The ALJ issued her decision on February 26, 2020. (R. 14–40.) At step one of the sequential evaluation process,[5] the ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date. (R. 20.) At step two, the ALJ found that Plaintiff had the following severe impairments: obesity, degenerative disc disease, degenerative joint disease, arthritis, type II diabetes mellitus, fibromyalgia, bipolar disorder with depression and anxiety, and panic disorder. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment

---

[3] There is a discrepancy in the record regarding the date of Plaintiff's application. The application summaries in the record indicate a date of May 17, 2016. (R. 345–55.) However, the Administrative Law Judge's opinion identifies the application date as May 9, 2016, (R. 17, 20), and the parties also use that date (ECF No. 16 at 2; ECF No. 17 at 1). This discrepancy does not alter the analysis in this opinion.

[4] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1).

[5] The Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

3

or combination of impairments that met or medically equaled the severity of one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) At step four, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the [ALJ] finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except occasionally climbing ramps and stairs but never climbing ladders, ropes or scaffolds. She can occasionally balance, stoop, kneel, crouch and crawl. She can tolerate frequent exposure to extreme cold, wetness, fumes, odors, dusts, gases and poor ventilation. She could occasionally reach overhead with the bilateral upper extremities. She can understand, remember and carryout simple routine tasks involving only simple work related decisions with the ability to adapt to routine workplace changes. She cannot perform any work that requires meeting strict production quotas and can have no more than occasional contact with the general public, coworkers and supervisors.

(R. 25.) At step five, relying on testimony from the vocational expert, the ALJ determined that Plaintiff could make a successful adjustment to other work that existed in significant numbers in the national economy. (R. 33–34.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. (R. 34.)

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

4

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)

## IV. ANALYSIS

As set forth above, Plaintiff advances two contentions of error. First, Plaintiff contends that the RFC is not supported by substantial evidence. (Pl.'s Statement of Errors 7–14, ECF No. 16.) Within this contention of error, Plaintiff posits that (1) the ALJ improperly discounted the opinion of her treating physician, Dr. Brian Still, and failed to give good reasons for doing so; (2) the ALJ impermissibly substituted on her own lay opinion in place of the medical opinions in the record; and (3) the ALJ improperly disregarded Plaintiff's mental symptoms and limitations in crafting the RFC. Second, Plaintiff contends that the ALJ erred in her consideration of Plaintiff's fibromyalgia. (*Id.* at 14–18.) Within this contention of error, Plaintiff posits that (1) the ALJ improperly failed to include RFC limitations to accommodate her fibromyalgia; and (2) the ALJ improperly failed to consider her fibromyalgia under Listing 14.09(D). The undersigned addresses each of these arguments in turn.

A.      **Plaintiff's First Contention of Error**

      1.      **The ALJ's Consideration of the Treating Source Opinion**

Plaintiff contends that the ALJ "failed to properly evaluate" the opinion of her treating physician Dr. Brian Still, and failed to give good reasons for "discounting" his opinion. (Pl.'s Statement of Errors 9, 12, ECF No. 16.) The undersigned disagrees.

An ALJ must consider all medical opinions that she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c).[6] Where a treating source's opinion is submitted, as here, the ALJ generally affords it deference because "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . . ." 20 C.F.R. § 416.927(c)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009). If the treating physician's opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

If the ALJ does not assign controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors-namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion.

---

[6] Plaintiff filed her application for benefits in 2016. (R. 345–55.) Accordingly, it is governed by the regulations cited here, which control claims filed prior to March 27, 2017.

*Id*. Further, an ALJ must "always give good reasons in [the] notice of determination or decision for the weight [the ALJ] give[s the] treating source's opinion." 20 C.F.R. § 416.927(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

There is no requirement, however, that the ALJ "expressly" address each of the *Wilson* factors in the written decision. *See Tilley v. Comm'r of Soc. Sec.,* 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all six factors in 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence in the written decision).

Finally, the Commissioner reserves the authority to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of [the claimant's]

7

impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

Here, the ALJ assigned "little weight" to Dr. Still's opinion. The ALJ summarized the opinion, and explained her reasons for discounting it, as follows:

> On July 18, 2017, Brian Still, D.O. completed a medical assessment, opining that the claimant could not stand or sit for more than two hours each in an eight-hour workday. He further stated that the claimant's ability to lift and carry were not affected by her impairment, but then went on to report that she could lift no more than 10 pounds (Exhibit C9F). The undersigned affords little weight to Dr. Still's statement, which consists primarily of checked boxes with little to no rationale supporting his conclusions. Not only are his findings internally inconsistent, but they are not supported by mild to normal physical examination findings throughout the record (Exhibits C2F, C3F, C6F, C10F, Cl 1F, C12F, and C14F). In fact, Dr. Still even characterized the claimant's health status as good stable with treatment (Exhibit C9F).

(R. 31.)[7]

The undersigned finds no error with the ALJ's consideration and assessment of Dr. Still's opinion. The ALJ properly declined to afford the opinion controlling weight and articulated good reasons for doing so. The ALJ reasonably rejected the opinion as internally inconsistent and unsupported by examination findings in the record. *See* 20 C.F.R. § 416.927(c)(2) (providing that a treating source opinion will be given controlling weight only if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record"). For example, as the ALJ explained, Dr. Still's opinion indicates that Plaintiff's conditions do not affect her lifting or

---

[7] The ALJ's decision also refers to a letter by Dr. Still (R. 32, "Dr. Still provided a letter dated July 11, 2017 in support of his opinion . . . .") However, this letter was authored by Dr. Donald Newberry. (*See* R. 1123). The undersigned concludes that this reference to Dr. Still is a typographical error, and does not consider it in this analysis.

carrying abilities, but also indicates, inconsistently, that she can only lift or carry between 6–10 pounds. (R. 1126.) Similarly, although Dr. Still's opined physical limitations are quite restrictive, he describes Plaintiff's health status is "good/stable" with treatment. (R. 1125.) In addition, as the ALJ noted, Dr. Still's opined significant limitations as to standing, walking, sitting, and lifting or carrying are not supported by the examination records that the ALJ discussed earlier in her decision, which reflect only normal-to-mild limitations. (*See, e.g.,* R. 1301–05 (2017 examination records reflecting intact range of motion and normal gait and station); R. 1273–75 (2018 records indicating normal gait and station); R. 1461–67, 1484–90 (2018 records indicating normal range of motion and 5/5 upper extremity strength); R. 2128, 2141, 2146, 2173, 2202, 2255, 2266, 2296 (2018–19 treatment notes indicating normal gait and range of motion); R. 1626–43 (2018–19 treatment records indicating stable gait); *see also* R. 26–28 (ALJ's discussion of this evidence).) Finally, the ALJ properly found that Dr. Still's use of "checked boxes with little to no rationale supporting his conclusions" was a good reason to discount his opinion. *See Pettigrew v. Berryhill*, No. 1:17–cv–1118, 2018 WL 3104229, at *13 (N.D. Ohio June 4, 2018) ("Numerous decisions have found that the use of checklist or check-the-box forms that contain little to no accompanying explanation for the assessed limitations— even when utilized by a treating physician or acceptable medical source— are unsupported opinions . . . .") (collecting cases). The lack of consistency and support that the ALJ outlined in her discussion of Dr. Still's opinion qualify as good reasons to afford that opinion little weight.

Plaintiff does not contest the inconsistencies the ALJ identified, but instead cites portions of the record that she maintains support her alleged level of impairment. (Pl.'s Statement of Errors 10–11, ECF No. 16.) However, the existence of evidence in Plaintiff's favor does not mean that the ALJ's decision to discount Dr. Still's opinion was not supported by substantial

9

evidence. "This is the classic situation in which the record evidence could support two different conclusions. In such scenarios, the law obligates the court to affirm the ALJ's decision, because the ALJ is permitted to decide which factual picture is most probably true." *Waddell v. Comm'r of Soc. Sec.*, No. 1:17–cv–01078, 2018 WL 2422035, at *10 (N.D. Ohio May 10, 2018), *report and recommendation adopted*, 2018 WL 2416232 (May 29, 2018); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) ("The substantial-evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.") (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

Because the ALJ provided good reasons for assigning Dr. Still's opinion only little weight, the undersigned concludes that the ALJ did not violate the treating physician rule or otherwise err in the consideration and weighing of this opinion.

**2.     The ALJ's Consideration of the Other Medical Opinions**

Plaintiff next contends that the ALJ erred because she "failed to accord great or significant weight to" any medical opinion in the record, impermissibly relying on "her own lay opinion" instead. (Pl.'s Statement of Errors 12, ECF No. 16.) The undersigned disagrees.

As set forth previously, the ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c); *see also* SSR 96–8p, 1996 WL 374184, at *7 (July 2, 1996) ("The RFC assessment must always consider and address medical source opinions."). Regardless of the source of a medical opinion, in weighing the opinion, the ALJ must apply the factors set forth in 20 C.F.R. § 416.927(c), including the examining and treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the source. However, the RFC determination is an issue

10

reserved to the Commissioner. 20 C.F.R. §§ 416.927(d); 416.946(c). "An ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) (citations omitted); *see also Reinartz v. Comm'r of Soc. Sec.*, 795 F. App'x 448, 449 (6th Cir. 2020) (upholding Commissioner's decision where plaintiff "contend[ed] that an ALJ may not make a work-capacity finding without a medical opinion that reaches the same conclusion," finding "the premise" of that position "is wrong").

In arriving at Plaintiff's RFC, the ALJ evaluated and discussed all 7 medical opinions in the record. Plaintiff is correct that the ALJ did not assign great or controlling weight to any of these. But Plaintiff's legal premise—that the ALJ erred because she failed to accord great or significant weight to any medical opinion—is wrong. (*See* ECF No. 16 at 12); *see also Reinartz*, 795 F. App'x at 449. The ALJ properly evaluated each medical opinion and included limitations in the RFC to account for aspects of the opinions that she found to be consistent with the record. For example, the ALJ assigned consultative examiner Gary Starver's opinion "partial weight," and accepted his "findings that the claimant could perform simple work" and that her "impairments might episodically attenuate her ability to respond appropriately to co-workers and supervisors." (R. 29–30.) The ALJ incorporated these findings in the RFC she assessed, including by limiting Plaintiff to "simple routine tasks involving only simple work related decisions," and "no more than occasional contact with the general public, coworkers and supervisors." (R. 25.) Conversely, the ALJ assigned "little weight" to the opinions of reviewing consultants Dimitri Teague and Maureen Gallagher, because she found their opined limitations were not restrictive *enough*. (R. 30, finding that "the collective record supports the claimant is more limited posturally, manipulatively, exertionally, and mentally" than these consultants

11

Case: 2:21-cv-00214-SDM-CMV Doc #: 18 Filed: 12/14/21 Page: 12 of 19  PAGEID #: 2459

opined.)  Accordingly, the ALJ assessed a *more* restrictive RFC than these consultants opined.  The ALJ offered a similarly substantial discussion of the other medical opinions of record.  Thus, she properly considered "all the relevant evidence in the record" as she was required to do.  20 C.F.R. § 416.945(a)(1).  Plaintiff has failed to identify any legal principle or evidence to support her contention that the ALJ's decision not to afford any of the medical opinions great or significant weight was in error.  Accordingly, the undersigned finds this argument lacks merit.

> 3. **The ALJ's Consideration of Plaintiff's Symptoms and Limitations**

Plaintiff additionally contends that the ALJ improperly "disregard[ed] her symptoms and limitations," and "cherry-picked evidence to support her findings."  (Pl.'s Statement of Errors 13, ECF No. 16.)  The undersigned disagrees.

It is well established that an ALJ is not required to "discuss every piece of evidence in the record to substantiate [her] decision."  *Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 254 (6th Cir. 2016) (citing *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004)); *see also Dykes ex rel. Brymer v. Barnhart*, 112 F. App'x 463, 467–68 (6th Cir. 2004) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." (citations omitted)).  The Sixth Circuit has further explained that:

> [a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts.

*Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (*quoting Loral Defense Systems–Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir.1999)) (citations and internal quotation marks omitted).  Moreover, an allegation of "cherry picking" "is seldom successful because crediting it would require a court to re-weigh record evidence."  *DeLong v. Comm'r of Soc. Sec.*

12

*Admin.*, 748 F.3d 723, 726 (6th Cir. 2014); *see also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) ("[W]e see little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence.").

Here, although the ALJ did not specifically address every piece of evidence in the record, her factual findings reveal that she considered the record as a whole and did not "cherry pick" the medical evidence to support her analysis.  For example, as explained above, the ALJ's mental RFC is quite restrictive and accounts for some of the limitations in Dr. Starver's opinion, to the extent the ALJ found these consistent with the remainder of the record.  Indeed, the RFC the ALJ assessed was *more* restrictive than the opinions of Drs. Teague and Gallagher.  Although Plaintiff identifies record evidence in support of the existence of her symptoms and limitations, (ECF No. 16 at 13), she fails to support her contention that the ALJ "disregard[ed]" any particular evidence.  To the contrary, the ALJ offered a substantial discussion of medical opinion evidence, treatment records, and Plaintiff's activities of daily living throughout her opinion. (*See, e.g.,* R. 23–25 (discussing medical evidence and activities of daily living); 26–28 (discussing Plaintiff's testimony; detailing treatment records and examination results); 29–32 (discussing 7 medical opinions).)  Weighing this evidence, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that the "intensity, persistence and limiting effects of these symptoms" were not borne out by the record.  (R. 26.)  Plaintiff's conclusory argument that the ALJ was "selective" is unpersuasive in view of the substantial record evidence upon which the ALJ relied.

In sum, the undersigned finds that the ALJ's consideration of the treating source opinion and the other medical opinion evidence, as well as the ALJ's analysis of Plaintiff's symptoms

13

and limitations, are supported by substantial evidence. The undersigned therefore **RECOMMENDS** that Plaintiff's first contention of error be **OVERRULED**.

**B.      Plaintiff's Second Contention of Error**

In her second contention of error, Plaintiff contends that the ALJ "failed to properly evaluate" her "fibromyalgia and her corresponding symptoms" under Social Security Ruling 12–2p. (Pl.'s Statement of Errors 14, ECF No. 16.) SSR 12–2p provides guidance on how an ALJ determines whether a claimant's fibromyalgia qualifies as a medically-determinable impairment and explains how fibromyalgia factors into the ALJ's sequential analysis. *See Luukkonen v. Comm'r of Soc. Sec.*, 653 F. App'x 393, 398–99 (6th Cir. 2016) (discussing SSR 12–2p, 2012 WL 3104869). Here, the ALJ found Plaintiff's fibromyalgia to be a severe medically determinable impairment at step two of the sequential analysis. (R. 20.) Plaintiff agrees with this determination but disputes the ALJ's further consideration of her fibromyalgia in two ways.

1.      **The ALJ's Accommodation of Plaintiff's Fibromyalgia in the RFC**

Plaintiff first contends that the ALJ improperly "failed to include accommodations in the [RFC] for Ms. Moran's chronic pain" associated with her fibromyalgia. (Pl.'s Statement of Errors 16, ECF No. 16.) The undersigned disagrees.

As the Sixth Circuit has acknowledged, "a *diagnosis* of fibromyalgia does not automatically entitle [a claimant] to disability benefits . . . ." *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008) (emphasis in original) (citing *Sarchet v. Chater*, 78 F.3d 305, 306–07 (7th Cir. 1996) ("Some people may have a severe case of fibromyalgia as to be totally disabled from working . . . but most do not and the question is whether [claimant] is one of the minority.") (citations omitted)). Accordingly, in cases involving fibromyalgia, an ALJ must

"decide . . . if the claimant's pain is so severe as to impose limitations rendering her disabled." *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 990 (N.D. Ohio 2003).

Here, Plaintiff fails to show that her fibromyalgia supports any different or more restrictive RFC limitations than those the ALJ assessed. As noted above, the ALJ found that Plaintiff's fibromyalgia constituted a severe impairment at step two of the sequential analysis (R. 20). At step three, the ALJ noted that she "considered SSR 12–2p and the diagnosis of fibromyalgia appears appropriate." (R. 23.) The ALJ then engaged in a thorough discussion of the medical evidence relating to Plaintiff's fibromyalgia. For example, the ALJ discussed medical records indicating that Plaintiff's "rheumatoid profile showed an elevated [C-Reactive Protein], but [her] lab work was otherwise normal," and that Plaintiff "presented in no acute distress" to her rheumatologist. (R. 23, 27.) The ALJ further found that over a period of more than four years, Plaintiff's physical examinations showed "a full range of motion across all joints," a "full range of motion of the upper and lower extremities," and a "normal range of motion, normal gait and station," despite also showing at least 11/19 tender points during those examinations. (R. 27.) The ALJ then determined that although "the record demonstrates a finding of fibromyalgia," Plaintiff's "disabling pain is not consistent with her routine and conservative care, physical examinations, and her activities of daily living." (R. 28.) The ALJ cited Plaintiff's ability to "drive, shop, cook, maintain hygiene and grooming, go on vacation to the beach, make jewelry, read, go to the library, and perform all her household chores independently," and Plaintiff's testimony that she had been applying to jobs for over a year. (*Id.*) Nevertheless, the ALJ's RFC limited Plaintiff to restricted light work with accommodations for Plaintiff's fibromyalgia, including that "she can occasionally reach overhead with the bilateral upper extremities." (*Id.*)

Plaintiff argues that "the record is replete with evidence that satisfies the requirements of SSR 12–2p," and cites to a laundry list of evidence supporting the *diagnosis* of fibromyalgia. (ECF No. 16 at 16.) However, Plaintiff does not identify any specific evidence that she contends the ALJ failed to consider in crafting the RFC. Nor does Plaintiff propose specific additional limitations that result from her fibromyalgia but are not incorporated into her RFC. Contrary to Plaintiff's contention, the ALJ's analysis complies with SSR 12–2p, and the RFC findings as they relate to Plaintiff's fibromyalgia are supported by substantial evidence.

2. **The ALJ's Consideration of Plaintiff's Fibromyalgia Under the Listings**

Plaintiff next contends that the ALJ erred by failing to evaluate her fibromyalgia under Listing 14.09(D). (Pl.'s Statement of Errors 16, ECF No. 16.) The undersigned disagrees.

The claimant shoulders the burden of producing medical evidence that establishes that all of the elements of a Listing are satisfied at step three of the sequential analysis. *See, e.g. Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 727–28 (6th Cir. 2004) (citations omitted). A claimant's impairment must meet every element of a Listing before the ALJ may conclude that he or she is disabled. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria.").

To satisfy Listing 14.09(D), a claimant must prove the following:

> Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
>
> 1. Limitation of activities of daily living.
> 2. Limitation of maintaining social functioning.
> 3. Limitations in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.09(D).

16

As an initial matter, as district courts in this Circuit have held, "even where a claimant suffers from fibromyalgia, an ALJ is not required to consider Listing 14.09(D)." *Boersma v. Comm'r of Soc. Sec.,* No. 2:17–cv–724, 2018 WL 1187805, at *6 (S.D. Ohio Mar. 7, 2018) (citing *Colon-Lockhart v. Comm'r of Soc. Sec.*, No. 14-14336, 2015 WL 10553206, at *6, 2015 U.S. Dist. LEXIS 177229, at *16 (E.D. Mich. Dec. 29, 2015)); *see also Fresquez v. Comm'r of Soc. Sec.,* No. 1:18–cv–114, 2019 WL 364257, at *6 (S.D. Ohio Jan. 30, 2019) (holding the ALJ did not err by failing to consider plaintiff's fibromyalgia under Listing 14.09(D) where plaintiff did not adduce evidence that she could satisfy the criteria for that Listing); *Thomas v. Comm'r of Soc. Sec.,* No. 2:18–cv–108, 2019 WL 642679, at *15 (S.D. Ohio Feb. 15, 2019) (same). Therefore, to the extent that Plaintiff argues the ALJ erred simply by failing to discuss Listing 14.09(D) in a case where Plaintiff has a fibromyalgia diagnosis, this argument is not well-taken.

Moreover, here, the ALJ's decision makes clear that Plaintiff does not satisfy the requirements for Listing 14.09(D). The ALJ found that Plaintiff does not have marked limitations in activities of daily living, maintaining social functioning, or completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace. To the contrary, the ALJ found Plaintiff's limitations to be only moderate in each of these areas. (R. 23–25.) Notably, Plaintiff does not challenge those findings, nor does she identify record evidence that would support different findings. Therefore, Plaintiff has failed to carry her burden to demonstrate that her fibromyalgia could meet or equal all the criteria for Listing 14.09(D). "[N]either the listings nor the Sixth Circuit require the ALJ to 'address every listing' or 'to discuss listings that the applicant clearly does not meet.'" *Smith-Johnson v. Comm'r of Soc. Sec.,* 579 F. App'x 426, 432 (6th Cir. Sept. 8, 2014) (citations omitted). For these reasons, the

17

undersigned finds that the ALJ did not err by declining to consider Plaintiff's fibromyalgia under Listing 14.09(D).

In sum, the undersigned finds no error with the ALJ's consideration of Plaintiff's fibromyalgia. The undersigned therefore **RECOMMENDS** that Plaintiff's second contention of error be **OVERRULED**.

## V. DISPOSITION

From a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. For the foregoing reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## VI. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report and Recommendation, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report and Recommendation or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence, or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review it *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the

Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE